Good morning. May it please the Court. Gina Giacopuzzi of the UCLA 9th Circuit Appellate Clinic, pro bono counsel for plaintiff-appellant Kanay Mubita. I'm here today with my co-counsel, Lindsay Gaeta of O'Melveny & Myers. We'd like to reserve two minutes for rebuttal, please. I will be arguing that the District Court erred in finding Mr. Mubita's 14th Amendment right to privacy claim barred by the two-year statute of limitations. My co-counsel will argue that the District Court erred in dismissing Mr. Mubita's right to informational privacy claim and his HIV status and sexual relations. The Police Department agrees in their answering brief that Mr. Mubita's 4th Amendment search and seizure claim and 14th Amendment due process claim, which the District Court found barred by Heck v. Humphrey, should have been dismissed without, as opposed to with, prejudice. At a minimum, therefore, this Court should remand for that purpose, regardless of how this Court decides the other two issues. The District Court found that Mr. Mubita, a Zambian native who immigrated to the United States in 2001, filed his pro se civil rights complaint eight days past the two-year statute of limitations. It did so by imputing knowledge of the press release from Mr. Mubita's public defender in his criminal case to Mr. Mubita in this civil rights case as of December 21, 2005, the date the public defender received the press release in discovery. The District Court's holding was in error. The issue regarding the statute of limitations is a narrow one. Whether during the eight-day window following the public defender's receipt of discovery, the public defender was obligated to pass along knowledge of the press release to Mr. Mubita or otherwise apprise Mr. Mubita of any civil rights claims he might have had against the Police Department based on the press release. What contact did the public defender have with the defendant during this period that, while the statute may have been running? Yes, Your Honor. It is unclear from the record what contact he had with the defendant. We know that the defendant was incarcerated before the press release was issued, so he was sitting in law talk. Well, they usually are, and the public defender usually goes over there to try to see  Correct, Your Honor. I submit that if, in the event that Mr. Mubita did visit with his public defender in the eight-day window following receipt of the press release, they discussed possible criminal defenses to Mr. Mubita's criminal charges. Those defenses did not necessarily or did not at all center on the press release. Rather, they were whether Mr. Mubita had committed the crimes at issue and whether the prosecutor would be able to prove those elements against him. Additionally, because the statute of limitations issue concerns only whether Mr. Mubita was legally on notice of the press release between December 21, 2005, and December 29, 2005, it is irrelevant that, as the Police Department argues, Mr. Mubita was present during his criminal trial and may have been on notice of the press release if it was entered in evidence. Mr. Mubita's trial took place in late March 2006. Mr. Mubita submitted this civil rights complaint on December 29, 2007. Thus, it would have been timely filed within the two-year statute of limitations even if he came on notice of the press release during trial. Similarly, even if we assume, as the Police Department argues, that Mr. Mubita was on notice of the press release as of the March 18, 2006 hearing on his motion to change venue, his complaint still would have been timely filed. Further, the imputation rule is inapplicable in this case. Courts have applied the imputation rule where an attorney receives information the attorney perceives as relevant to the representation at the time of the attorney's receipt of the information. For instance, in In Living Designs v. E.I. DuPont, the Ninth Circuit held imputation inappropriate even though the plaintiff's attorney may have had access to the information due to widespread news coverage because, quote, the attorney did not realize the import of the knowledge until much later. Mr. Mubita's public defender, the individual who actually received the press release and discovery, was appointed and paid for by the State of Idaho to defend Mr. Mubita against criminal charges. He was not Mr. Mubita's attorney in connection with these civil rights charges or, I'm sorry, the civil rights case. It's unrealistic to assume that Mr. Mubita's public defender should have considered the press release pertinent to Mr. Mubita's criminal defense immediately upon its receipt or even eight days later. The public defender's focus was to defend Mr. Mubita against criminal charges, not to apprise him of any civil rights claims he may have based on the press release. Applying the imputation rule in the manner employed by the district court could lead to unworkable consequences, such as requiring criminal defense attorneys to immediately analyze discovery and apprise their clients of any and all possible civil rights claims they may have. If there are no more questions, I'll turn it over to my co-counsel to discuss the right to privacy issue. Thank you. Good morning, Your Honors. Lindsay Gaeta with O'Melveny & Myers. The second issue is whether the district court erred in dismissing Mr. Mubita's right to privacy claim, regardless of its decision on the statute of limitation issue. As this court made clear in in regarding Crawford, the police department has the, quote, burden of showing that its use of information, here Mr. Mubita's HIV status and sexual relation details, would advance a legitimate interest and that its actions are narrowly tailored to meet that interest. This court has applied a five-factor balancing test to determine whether the government may properly disclose the private information. The district court did not engage in balancing to determine whether Mr. Mubita's privacy interest in maintaining the confidentiality of his disease and his sexual relations outweighed the police department's interest in disclosure or hold the police department to its burden of proof as it must under this circuit's precedent. Why isn't it fairly obvious that the police department has an interest in advising the public of the fact of the arrest and that there is a defendant in custody who may have infected people with this disease? We concede that the police department had a legitimate interest in public safety. The issue here is whether it could have achieved that interest in public safety while still preserving the confidentiality of Mr. Mubita's HIV status. This court has held that it is the police department's burden to prove that its actions were narrowly tailored to meet its interest, and they did not do so here. And the district court did not even give this factor consideration in its opinion. Does Mr. Mubita even have a privacy claim here? It seems that the inherent nature of the charge reveals what he claims was private. I think the charge is transfer of body fluids which may contain the HIV virus. I guess once he's charged with that, I guess the police have a right to inform the public of any charge, especially one like this. How does he even have a claim here? You're right. The title of the statute, Idaho Code Section 39608, charges one transfer of HIV fluid that may contain the HIV virus, but the press release went beyond even the title of the statute and definitively stated Mr. Mubita had HIV and even went beyond that and speculated that he was engaging in multiple sexual partners. So it went beyond even the careful wording of the title of the statute. Well, it had the basis for its charge in the press release. The text of the statute may implicate persons who have HIV, but, again, if the press release had just published the fact of Mr. Mubita's arrest, something that would be more limited, more narrowly tailored, the public would not have been unnoticed that he had HIV. These were still, at this point in time, elements that had yet to be proven. At the time of the press release's issuance, Mr. Mubita had simply been arrested. The press release was issued one day after his arrest. So to get back where I was, unless you have more questions, Your Honor. No. You're going back to where I want you to go. And how does the public go? The need for public disclosure seems like it outweighs if Mr. Mubita has a privacy interest. It seems like the need for public disclosure would outweigh it. Yes. And those are two interests that need to be balanced against each other. And, again, this is something the district court did not do. And one interest cannot be elevated over another. And there are other factors under the Ninth Circuit precedent that should be weighed in making the calculation. One of the factors, again, that the district court nor the police department argued was the potential for harm in the disclosure of Mr. Mubita's HIV status and sexual relations. This court recently recognized in Seton v. Mabur that discouragement of people from obtaining medical assistance constitutes a serious potential for harm in disclosure of the medical information. And this is a factor that must be given careful consideration. Here, disclosure could prevent people such as Mr. Mubita, who has HIV, from seeking that medical assistance. In fact, Mr. Mubita signed various forms with the Idaho Health Department that recognize the confidentiality of his disease, query whether Mr. Mubita or anyone else suffering from the deadly disease would procure this necessary medical treatment if they knew that their private medical condition would be publicly disseminated. Another factor, similarly, is whether there is any public policy that militates protecting the confidentiality of one's HIV status. And Idaho public policy is on point here. Idaho Code section 39609 states, I quote, it is hereby declared to be the policy of this state that an effective program of preventing AIDS must maintain the confidentiality of patient information and restrict the use of such information solely to public health requirements. It also advocates balancing. Balancing is something that the district court, again, did not do. In conclusion, Your Honors, the district court failed to thoroughly evaluate the factors the Ninth Circuit weighs in determining whether Mr. Mubita's privacy interests outweighed the police department's interest in disclosure. We ask that you reverse its decision and issue a finding that his right to privacy was violated. Are there any questions? Thank you, Kath. Good morning, Your Honors. My name is Sonia Leenuch. May it please the Court. I represent the Respondents in this case, which is the Moscow City Police Department and specifically Chief Weaver. As has been indicated, the lower court dismissed this case on three alternate grounds. First of all, the Court found that Mr. Mubita's Fourteenth Amendment right to privacy claims should be dismissed because he failed to file his complaint within the appropriate statute of limitations. The Court then went on to state in the alternative, even if Mr. Mubita had filed his complaint within the appropriate statute of limitations, he did not have a legitimate expectation of privacy in the information that was disclosed in the press release. And finally, again, in the alternative, found that even if Mr. Mubita did have a legitimate expectation of privacy in the information contained in the press release, the legitimate and overwhelming need by the government to get this information out to the public outweighed any privacy interests that Mr. Mubita may have had. So starting with the statute of limitations issue, this is definitely not a case of where we can establish that Mr. Mubita had actual knowledge of the press release. Mr. Mubita claims that he did not receive it until well later after he received a stack of documents, including his trial transcript from the criminal case and claims it was attached there, too. So this is a question of whether or not the fact that Mr. Mubita's criminal attorney in the criminal case issued a formal discovery request to the prosecutor to which the prosecutor responded and formally disclosed this press release, the attorney received it, whether or not that receipt of the document then is imputed to Mr. Mubita. Under traditional standard agency principles, that's generally the way it works. If you have a lawyer, then anything the lawyer receives on your behalf is going to be imputed to you. And we believe that there is no difference for that in this case. And there's one case, I know we've briefed this extensively, but there was one particular case that was cited by the appellants, actually, in their reply brief, which is Ville v. Garazzi. It's a Second Circuit case. This case was just cited in passing, and I think the Court should look at this case because it's directly on point. It first of all deals with a Section 1983 case, so we have the correct standard before the Court. The standard is whether or not Mr. Vita Mubita knew or should have known of this claim, and so it opens the door for constructive knowledge. In Garazzi or in Ville v. Garazzi, what happened was there was a tainted lineup, and that was the issue in that case. And in the tainted lineup, the question was whether or not the individual, the criminal defendant, Mr. Ville, when he received knowledge of the tainted lineup and then later wanted to file a civil suit as a result of that tainted lineup, when did he become aware, when did he receive knowledge of the tainted lineup? The Second Circuit went through the entire analysis, the same as this Court is going to have to do, and found that it was when the attorney, his criminal attorney, first became aware that there was a tainted lineup during the course of the criminal case, and that knowledge was then imputed to Mr. Ville for the purposes of the statute of limitations and his knowledge of when his claim either arose when he knew or should have known that the claim arose. And so we're asking in this case, it's the exact same situation. That fact was directly relevant to the criminal case. It was. It was something that they certainly addressed in the criminal case, Your Honor. They assume it was a basis for an objection to the conviction. It was. It was a basis for the objection to the conviction, exactly. And the issuance of a press release wouldn't make the conviction more or less likely. It would not, Your Honor. But the issue as to whether or not he had knowledge of the tainted lineup, that was what was specifically addressed by Ville v. Grassi. There was a second issue as to when the harm occurred, and I believe that was where the material issue came into play. But when he had knowledge of the tainted lineup was when the attorney was aware of it. But here, we don't have that. We don't. I mean, in our case, the Vita, he's claiming he didn't have knowledge when the lawyer had knowledge of it. Exactly. But that's exactly what Ville was claiming. Ville claimed that even though he sat in the hearing, that he did not have any knowledge whatsoever of the tainted lineup, which is what makes the cases very similar. Ville claimed that he did not receive any knowledge whatsoever of the tainted lineup until much later, again, when he was preparing for his appeal several years later and he received the documents from his criminal lawyer. That was his exact argument. And the Court said it doesn't matter. It doesn't matter whether or not he had actual knowledge, because under Section 1983 law, the question is whether or not he knew or should have known, and they imputed the attorney's knowledge to him at the date that the attorney in the criminal case knew. So that's why they are so similar, Your Honor. And that's why I believe that that case is appropriate. And in this situation, there was a formal discovery request. Mr. Mooby, his attorney, received that notice during the course of the formal discovery request in the criminal case that he was representing him in. That's a transaction he was representing him in in that case. He was not adverse to his interest in any way. And that that knowledge should be imputed to Mr. Mooby, which means that he filed his complaint beyond the appropriate statute of limitations. Again, as the lower court held, however, if this Court determines that the complaint that the discovery notice should not, or the discovery documents received should not be imputed to Mr. Mooby, we still believe that the complaint should be dismissed for his 14th Amendment right to privacy claim, because he definitely did not have an expectation of privacy in the information that was contained in the press release. The information, this apparently threshold question at least has been disputed in the briefing as to whether or not this Court needs to engage in that analysis. And I submit under constitutional straight-up principles, this Court needs to look at this. If you do not have an expectation of privacy in the information that's being disclosed, you can't have a violation of a constitutional right. So we've got to start there. And the first step in the analysis is information that's readily available to the public is not protected by a constitutional right. It doesn't implicate the right to privacy. So you don't even get to the balancing factors or have the analysis. The information, looking at the different cases, we have arrest records clearly fall within this information that's readily available to the public, judicial proceedings, again, the same type of information. There's a body of case law talking about police reports and the information contained in police reports. We have one case in the Ninth Circuit, Baker v. Howard. It's a 1969 case, but it did go to the heart of the matter and talk about information contained in a police report. And in that situation, even though the law enforcement officer disclosed the information in the police report to a radio station and that information was broadcasted, even though that information had been broadcasted and the individual had never been charged, this Court found that that information did not implicate the right to privacy. So we have this entire body of law talking about judicial arrest records, judicial proceedings, and police reports, and that's basically what we have in the press release. That's the information contained in the press release that was disclosed regarding Mr. Mubita. When you talk about whether or not his HIV status needed to be disclosed, that is one of the elements that the prosecutor had to prove. Kennedy, anything that's contained in a police report can be disclosed to the public? Some witness says to the police officer who puts it in his report that some individual is a sexual aggressor, that that means that because that individual told that to a police officer, the police can make an announcement that he is a sexual aggressor? Your Honor, I think if we look at Mangels v. Pena, which is a Tenth Circuit case, that case says that criminal activity is not protected by the right to privacy. And I think if you're looking... Well, there is no criminal activity. It's just some individual. Right. And the cases that look at police reports from the standpoint of a third party, a third party individual who gives that information to law enforcement, the circuits are split. We have one case, which is the Sheets v. The Morning Call. In that case, the Third Circuit said the information given by the victim actually did not implicate the right to privacy. And then we have other cases where there was a victim of rape who the entire video was released, and the court said, wait a minute, the victim does have a right to privacy, or at least it's implicated in whether or not the video of the rape was released. In that case, however, the court said there may have been a legitimate law enforcement reason for releasing it, and they would look at that at a later date. But as far as Mangels v. Pena, going back to that, I think we can shape the information that's in the police reports that can be disclosed by balancing it with Mangels v. Pena, which says that criminal activity is not protected by the right to privacy, and a validly enacted law places citizens on notice that violations thereof do not fall within the realm of privacy. So if we have law enforcement who conducts an investigation and discovers criminal activity by an individual, and that they were aware that this law placed them on notice that the activity that they are engaged in is a crime, I don't think that person, the defendant, the potential criminal defendant, can then say that they have a valid right to privacy in that information. So I think you can balance it. But, yes, third-party individuals who report stuff to law enforcement, I think the circuits are split as to whether or not they would still possess a right to privacy. In this case, we're talking about Mr. Mubeda, and we're talking about the activity that he engaged in, and specifically the criminal activity that he engaged in, and the activity that he specifically knew was illegal, because we know that that was against the law in the state of Idaho and was a felony. If you look at the supplemental excerpts of records that we provided to the court, in there there's a document that Mr. Mubeda had to sign because he was getting different types of benefits and substance as a result of his HIV status. And it alerted him to the fact that if he had sexual intercourse with women without disclosing his HIV status to them, that that would be a felony in the state of Idaho. He's on notice. A validly enacted law places him on notice. If he engages in this activity, he does not have a valid expectation of privacy. Kennedy. Does he still have criminal proceedings going on in Idaho? At this time, Your Honor, he has a – there's one appeal that was actually noted by the district court that is now in Federal court continuing a habeas corpus action as to his criminal case, yes. Well, then, was it an error for the district court to dismiss with prejudice his possible other claims? Your Honor, we have conceded that point. We believe that they should have been dismissed without prejudice. Yes. Yes. So we do not believe that he had an expectation of rights to privacy in any of the information that was contained in the police report. But again, as the lower court said in relation to the Fourteenth Amendment claim, even if he did have a legitimate expectation of privacy in the information in the police report, there was this overwhelming legitimate government interest in disclosing the information. We have – in this situation, we know that the right to informational privacy is not an absolute right. It's a conditional right. If the government has a legitimate interest, they can disclose the information. And that's exactly what happened in this situation. Chief Weaver is the chief of a very small town in northern Idaho. This is a university town. He has conducted a thorough investigation and knows that Mr. Mubita's target range is between 18 and 22-year-olds. We're talking about university town, small population, and he knows that Mr. Mubita has been having sexual relations with these women without disclosing his HIV status. If Chief Weaver can get five people to respond, absolutely five people to respond to this press release, he can not only stop those five individuals from the possible consequences of the HIV virus, which is deadly, obviously, if untreated. But the question is then, what happens if those five people have then had relations with five other people and those five people with five other people? The numbers get crazy in the small town of Moscow. The whole town of Moscow. Pretty soon, Your Honor. And unfortunately, it wasn't just five people who responded. It was 14. Fourteen women came forward who said that Mr. Mubita had relations with them. The state was able to convict on 11. So obviously, there was a legitimate overwhelming interest for Chief Weaver to issue this press release. And because of that, we do not believe that Mr. Mubita has a 14th Amendment right to privacy claim. We believe that this Court we ask this Court to uphold the lower court's dismissal of that claim with prejudice. Thank you. Thank you, Kath. Your Honor. As I said at the outset, doesn't it seem fairly obvious to you that if the police ever have a right to announce an arrest that puts the public in danger, that this would be a case in which they could? It's not our argument that the police department did not have a right to announce his arrest. The press release went beyond the fact of his arrest. But on the basis that there is a legitimate concern that Mr. Mubita is transferring HIV fluids to females throughout Moscow. The police, that's a legitimate concern. The bigger question is whether there was an alternative means to alert the public of potential criminal activity. And we assert that there was, whether that's through various iterations of a press release or through other directed, geographically directed attempts to reach victims. For example, discussing with Mr. Mubita's acquaintances, conducting further investigations. The press release was very simple. Apparently it said that Mr. Mubita did not inform sexual partners of his HIV status, that Mr. Mubita may have had multiple sexual partners. Right. And then it called upon, I guess, the public. So what would the chief, what should the chief have done? The police department could have issued a press release that simply said Mr. Mubita had been arrested for violation of code section 39608. Please contact us if you had any sexual contact with Mr. Mubita. It could have. And what would that have concealed? People would have had to go read the code section and they would have found out the same thing. It's in the press release. At that point it would be up to the discerning public to decide whether or not to go and look up that code section. That's a lot different from publishing definitively that someone has HIV for everyone to see by a press release. Well, you can see it by a press release if you go read the code section. Right. And the point of the press release is that they want people to understand and know. I think they would understand and know if they simply had. If they read the code section. Well, simply having a press release that said Mr. Mubita had been arrested for violation of this code section, contact us if you've had sexual contact with him, I think they would understand that this was a serious crime and that if they had such relations with him, they should contact the police department, and thus its public safety objective would be met, also still preserving Mr. Mubita's HIV status. And also, too, that the press release went beyond even opining about him having AIDS and speculated about his multiple sexual partners, another fact that was not in the public record. There was a couple of points I wanted to address brought up by Ms. Nutsch here. And one is she indicated that you don't even get to the balancing test where there's no legitimate expectation of privacy. And that's incorrect under the Ninth Circuit precedent. I believe the case she's relying on is the Tenth Circuit case of Nielsen, which actually does suspend the balancing test if there is no legitimate expectation of privacy. But as you know, we're in the Ninth Circuit, and balancing weighs five factors, and no one right is elevated over another. Secondly, with respect, there was some argument on the police reports. I think Ms. Nutsch argued that information included in police reports is public information. First of all, there's nothing in the record to indicate that the information included in the press release was found in a police report. Secondly, again, the case that stated that information complained in police reports does not implicate the right to privacy was the Nielsen case, again, the Tenth Circuit case. And in making that statement, that court relied upon the Sheets case, which Ms. Nutsch referenced. That case merely held that once a victim voluntarily filed a police report, she could not reasonably expect that information to remain private. The court emphasized, quote, the information that has been protected in other cases was information that the disclosing person reasonably expected to remain private. This information is not like medical records, where there's a reasonable expectation that privacy will be preserved. This case, medical records, it's Mr. Mubeda's HIV status that courts like CETA have recognized deserves the utmost confidentiality. I think I've addressed the key points here. Are there any more questions? Thank you very much, counsel. Thank you all. The argument of this case just argued will be submitted. And I want to say that we do appreciate the participation of the law school clinic and thank you for coming.
judges: Goodwin, Reinhardt, Murguia